**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1:14-cr-00231-WJM-15

UNITED STATES OF AMERICA,
Plaintiff,

v.

1. RICKY GARRISON,
4. FRANCISCO AGUILAR,
9. ARCHIE POOLE, and
**15. ROBERT PAINTER,**
Defendants.

---

**DEFENDANT ROBERT PAINTER'S MOTION TO SUPPRESS WIRETAP EVIDENCE, AND FOR SPECIFIC WIRETAP DISCOVERY**

---

COMES NOW, defendant Robert Painter, by and through his undersigned counsel, and in accordance with the Court's April 6, 2016 order (Doc. 898) files this motion to suppress the wiretap evidence in this case and also for specific discovery as delineated below:

## I. BACKGROUND

The indictment charges 71 counts of controlled substance violations against 16 defendants. Mr. Painter is the 15th defendant. All but four defendants have entered into plea agreements with the prosecution.

Those four defendants are: Number 1 Ricky Garrison; Number 4 Francisco Aguilar;

Number 9 Archie Poole; and Number 15 Mr. Painter.[1]

The prosecution obtained 13 wiretap orders when investigating this case. The first order tapped Target Telephone 1 ("TT1"), which was a phone used by one Francisco Ramirez.[2] About three weeks later, the TT1 wiretap order was used as a basis to obtain the second wiretap order, and so on in cumulative fashion for subsequent wiretap orders. Accordingly, this motion addresses the TT1 order as the starting point of all the wiretap evidence.

Before Mr. Garrison's first set of lawyers withdrew, they moved for wiretap-related discovery. By order dated December 3, 2015 (Doc. 706), the Court denied their motion without prejudice. In part, this motion also follows up on Doc. 706.

## II. FACIAL CHALLENGE

As discussed on page 8 of Doc. 706, a facial wiretap challenge argues that the information before the judge who issued the wiretap order was, in reality, insufficient to justify the wiretap order. This motion incorporates the legal authority and principles discussed in that portion of Doc. 706.

---

[1] Doc. 898 expressed a preference for one wiretap motion on behalf of all remaining defendants. Undersigned counsel for Mr. Painter has conferred with the lawyers for the other three remaining defendants on that point. None of them are in a position to draft a motion on behalf of all remaining defendants. As discussed in Mr. Painter's Request for Clarification Regarding April 8, 2016 Order, which Request is being filed with this motion (and is incorporated here by reference), as the 15th listed defendant Mr. Painter's interests differ from the interests of defendants 1, 4, and 9, and therefore Mr. Painter is unable to file a motion on their behalf.

[2] Mr. Ramirez later became a defendant in related case 14-cr-00231-WJM.

**A. The application is ostensibly addressed to the Gangster Disciples gang as a "tight-knit" Target Organization, but the supporting affidavit shows the real target was people unrelated to the Gangster Disciples who were providing drugs to Duke Surenos gang member Francisco Ramirez.**

The TT1 application identified the "Target Organization" for the wiretap as the Gangster Disciples gang. WT 000002 ¶2.[3] The application purports to seek an order to obtain more information about the alleged criminal activities of the Gangster Disciples as the Target Organization. WT 000095. Accordingly, the wiretap order which granted the application named the Gangster Disciples as the Target Organization for the wiretap. WT 000100 ¶a.

The October 2013 affidavit in support of the application described the Gangster Disciples as an African-American street gang engaged in drug trafficking and related violent crimes. The Gangster Disciples had originated in Chicago but spread to other places including Colorado. WT 000027 ¶¶15-16. The TT1 wiretap was sought as part of an investigation of crimes allegedly committed by the Gangster Disciples in Colorado. WT 000028 ¶19. The avowed purpose of the TT1 wiretap was to further the investigation of those Colorado crimes. WT 000028 ¶19; WT 000098 (Conclusion).[4] The wiretap was needed in part because "the Gangster Disciples and their associates are a tight knit organization." WT 000080 ¶143.

---

[3] The wiretap application documents were submitted to the Court on December 3, 2015. *See* Doc. 701. This motion cites to those documents in the shortened form of "WT" and Bates number.

[4] The Gangster Disciples had been investigated in Colorado in 2012, but when the TT1 application was submitted, the affidavit for the application conceded that no link had been drawn between the 2012 investigation and the 2013 investigation for which the TT1 wiretap was sought. WT 000027 ¶¶17-18. Similarly, the affidavit conceded that no link had been drawn between the 2013 investigation for which the TT1 wiretap was sought and allegations that Gangster Disciples sold heroin in Denver's Civic Center Park. WT 000031 ¶30.

The TT1 affidavit identified seven specific people as alleged "members and/or associates of the Gangster Disciples." WT 000023 ¶7(a). Mr. Painter is not one of them. He does not appear in the TT1 affidavit. As alleged in subsequent prosecution wiretap application affidavits, Mr. Painter was a "drug customer" of Mr. Garrison. WT 000271; WT 000433.

The first of the seven people identified by the TT1 affidavit as members or associates of the Gangster Disciples was the aforementioned Francisco Ramirez. WT 000023 ¶7(a). As the user of the targeted telephone, Mr. Ramirez was the focus of the affidavit when viewed as a whole.[5] But Mr. Ramirez was not a Gangster Disciple. Rather, as expressly averred in the TT1 supporting affidavit itself, he was a known member of the Duke Surenos gang. WT 000030 ¶25; WT 000073 ¶130.

The affidavit alleged that Mr. Ramirez was a drug supplier for Mr. Garrison, and that Mr. Garrison was a "suspected" member of the Gangster Disciples. WT 000021 ¶6(a); WT 000032 ¶31; WT 000034 ¶38; WT 000073 ¶130. The affidavit also alleged that Mr. Ramirez and Mr. Garrison were engaged in joint activity to obtain drugs. WT 000033 ¶¶34-36; WT 000052 ¶83. The affidavit does not indicate that the Duke Surenos gang was running a joint operation with the Gangster Disciples; the affidavit indicates that Mr. Ramirez and Mr. Garrison sometimes worked with each other to the apparent mutual advantage of their individual drug-dealing activities.

---

[5] *See*, *e.g.*, WT 000021 ¶6(a) (Mr. Ramirez is the person who used the targeted phone); WT 000025-26 ¶¶11-12 (Mr. Ramirez was the named interceptee for wiretap orders obtained in 2012, in an investigation called Operation Red Dawn which did not include Mr. Garrison, *see* WT 000091-2 ¶¶168-169); WT 000035-44, ¶¶40-68 (describing undercover officer's drug purchase from Mr. Ramirez, and related circumstances); WT 000045 ¶¶69-70 (describing Mr. Ramirez's use of telephones for dealing drugs); WT 000045-50, ¶¶71-81 (describing additional controlled purchase from Mr. Ramirez).

Moreover, the TT1 affidavit did not allege that five of the remaining six individually identified "members and/or associates of the Gangster Disciples" – Jesus Molina-Villarreal, Salvador Marruffo, Javier Segura-Cisneros, an unknown drug courier for Mr. Molina-Villarreal,[6] and Glen Walls – were members or associates of the Gangster Disciples. WT 000022-23. As far as the specific averments in the affidavit showed, those people were independent drug suppliers to Ramirez (except that two of those five people were couriers for one of the suppliers), and they had no association with the Gangster Disciples. WT 000022-23; WT 000032 ¶¶32-33; WT 000052-53 ¶¶84-85; WT 000059 ¶96.

That leaves Ricky Garrison. The affidavit repeatedly refers to him as a "suspected" member of the Gangster Disciples. WT 000021 ¶6(a); WT 000028 ¶20; WT 000034 ¶38; WT 000073 ¶130. Moreover, the government's investigation indicates that Mr. Garrison became estranged from the Gangster Disciples about the same time as, or shortly after, the TT1 application was filed in late-October 2013. *See* Exhibit 1, G.J. Trans. 06/03/14, p. 92, lines 1-6 (which will be filed independent of this pleading, with the request for the Exhibit to be filed as a Restriction Level 1 document).

There is no indication that the TT1 affidavit was corrected to reflect Mr. Garrison's estrangement from the Gangster Disciples.[7]

---

[6] This person was subsequently identified as Ivan Dominguez-Quezada. Mr. Dominguez-Quezada is a defendant in two other cases, 14-cr-230 and 15-cr-272. There is no indication that Mr. Dominguez-Quezada was a member of the Gangster Disciples.

[7] The affidavit alleges that Mr. Garrison and/or Mr. Ramirez had contacts in January and August 2013 with a "documented Gangster Disciple" named Shauntay Craig and a "suspected" Gangster Disciple named Quentin Williams. WT 000030-31 ¶¶25-28; WT 000056-57 ¶91; WT000058 ¶95.

Review of the prior cited portions of the affidavit, and of the affidavit as a whole, shows that the affidavit does not describe an investigation into a "tight-knit" Gangster Disciples "Target Organization." Rather, the investigation revealed by the substantive allegations in the affidavit was a rather free-wheeling inquiry into the individual drug-related activities of Mr. Ramirez and Mr. Garrison, with a focus on Mr. Ramirez's drug sources. Because Mr. Ramirez was a Duke Sureno, and his sources had no apparent connection with the Gangster Disciples, tapping Mr. Ramirez's phone moved the investigation further away from the Gangster Disciples. Accordingly, the wiretap order fails on its face as an order against the Gangster Disciples as the purported Target Organization. The order improperly approved what amounted to a fishing expedition into any drug sources for Mr. Ramirez.

**III. DISCOVERY REQUESTS**

The Court's December 3, 2015 order recognized that discovery requests may be appropriate for a *Franks* challenge. The Court held that "the defendant must offer a specific, articulable basis for believing that the Government possesses particular evidence or information, not otherwise available to the defendant, that would support a claim that a warrant affiant intentionally or recklessly misstated or omitted material information in the relevant warrant application(s)." Doc. 706, at p. 16. The Court further held that if a defendant "can formulate much more specific, supported, and focused requests for information the Government is likely to have and which would potentially support a *Franks* challenge, Garrison should request such information from the Government and, if the Government refuses to produce it, may file a new, tailored discovery motion on these limited grounds." Doc. 706, at p. 17. Mr. Painter has two specific requests under this portion of the December 3, 2015 order.

**1. Documents relating to CHS-1.**

The supporting affidavit for the TT1 application relied heavily on information provided by Confidential Human Source (CHS) number 1. The information provided by CHS-1 was so important that the application could not have been filed without it, because CHS-1 provided information to the investigating officers about almost every significant topic in the affidavit, including: drug-dealing by Mr. Ramirez, WT 000035 ¶40, WT 000039 ¶53, & WT 000045 ¶¶69-70; Mr. Ramirez's drug sources, WT 000052-3 ¶¶84-85; Mr. Ramirez's drug-related interactions with Mr. Garrison, WT 000033 ¶¶34-36, WT 000051-2 ¶83, WT 000057 ¶93; the alleged stymied robbery of one of Mr. Ramirez's drug sources (Mr. Molina-Villarreal) by Mr. Ramirez, Mr. Garrison, Shauntay Craig, and Quentin Williams, WT 000030-31 ¶28; and Mr. Garrison's alleged murder of (or arrangements to murder) a drug-case witness, WT 000029 ¶22. In one place, the affidavit stated: "To the best of your affiant's knowledge, at no time has CHS-1's information been proven to be unreliable or untruthful." WT 000074 ¶131. However, the reliability or truthfulness of CHS-1's information is called into question by two other places in the same affidavit.

In the first of those two other places, the affidavit stated that the police had found no documentation to corroborate CHS-1's allegation that Mr. Ramirez and Mr. Garrison had committed multiple robberies of drug dealers before January 2013. WT 000031 ¶29. Perhaps there was no such documentation because CHS-1 was wrong about this allegation.

This possibility is supported by the second other place in the affidavit. There, CHS-1 told the police that Mr. Ramirez had registered his TT1 phone under a certain non-existent name and address. However, the police learned the phone had actually been registered to an apparently real person and address, which was different from the name and address provided by

CHS-1. WT 000045 ¶70. The police did not know if Mr. Ramirez had misinformed CHS-1 about this point, or if CHS-1 had just been wrong about it. *Id*.

Accordingly, despite the TT1 affidavit's assertion that CHS-1's information was always accurate and reliable, two other parts of the affidavit question the reliability or truthfulness of information from CHS-1. Because CHS-1 could have been wrong about two points in the affidavit, the possibility exists that CHS-1 also was wrong about other points in it. Thus there is a good faith basis for *Franks*-based discovery about all the information which CHS-1 provided in this investigation (or at least for the TT1 application affidavit).

Accordingly, Mr. Painter requests disclosure of information about CHS-1 from the law enforcement and prosecution agencies involved in this investigation. He would agree to a reasonable protective order regarding that information. (For instance, he would agree to a protective order which would allow him to review but not possess any documents produced in response to this motion. He also would agree that documents produced through this motion would not be attached to any public filing without a Level 2 Restriction.)

**2. 15-Day Reports, and other information in the wiretap case court files.**

The TT1 wiretap order included a provision requiring the prosecution to provide reports every 15 days to "show[ ] what progress has been made toward achievement of the authorized objective and the need for continued interception." WT 000107. These "15-day reports" have not been provided in discovery. Upon information and belief, Mr. Garrison's first set of lawyers discussed these documents with the prosecution; and while the prosecution indicated it was inclined to produce them, the prosecution has not done so. Mr. Painter requests that they be produced.

Mr. Painter also requests any other contents of the wiretap case court files not already produced. *See U.S. v. Oregon-Cortez*, 244 F.Supp.2d 1167, 1172 (D.Colo. 2003) (the information available to the judge who issued the wiretap orders is not limited to the wiretap application, supporting affidavit, and order; it also includes "the 'testimonial or documentary evidence' introduced at the *in camera* proceedings before the issuing judge"). The case number for the wiretap applications is 13-WT-6-WYD. Mr. Painter requests production of the full contents of that case file. Again, he would agree to a reasonable protective order.

WHEREFORE, Robert Painter moves to suppress the wiretap evidence, and he also requests the delineated discovery items.

Dated: April 13, 2016

Respectfully submitted,

*s/ Patrick J. Burke*
Patrick J. Burke
Patrick J. Burke, P.C.
999 18th Street, Suite 2055
Denver, Colorado 80202
303-825-3050
303-825-2992 fax
Patrick-J-Burke@msn.com

*s/ Dean Neuwirth*
Dean Neuwirth P.C.
950 S Cherry St, #300
Denver, Colorado 80246
303-329-9222
dean.neuwirth@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April 2016, I electronically filed the foregoing **DEFENDANT ROBERT PAINTER'S MOTION TO SUPPRESS WIRETAP EVIDENCE, AND FOR SPECIFIC WIRETAP DISCOVERY**, with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Zachary Phillips, Zachary.phillips@usdoj.gov
*Assistant United States Attorney*

Miller Leonard, millermleonard@gmail.com
Scott Poland, scottpoland@questoffice.net
Ronald Hahn, rhahn3677@hotmail.com

*s/ Jennifer J. Feldman*